UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AFFORDABLE BIO FEEDSTOCK, INC.,

       Plaintiff,

v.                                         Case No.  6:11-cv-1301-Orl-28TBS

DARLING INTERNATIONAL INC.,

       Defendant.

_____

ORDER

      This case is before the Court on Plaintiff, Affordable Bio Feedstock, Inc.'s

Motion to Compel Production of Documents or in the Alternative, Motion for In

Camera Inspection of Documents and Order Compelling Production.  (Doc. 67).  The

motion seeks discovery of 18 emails the Defendant says are protected from

disclosure because they are work product, attorney-client privileged communications,

and proprietary business and financial information.  (Doc. 67-1).  Defendant, Darling

International, Inc., has filed its response in opposition to Plaintiff's motion (Doc. 68).

The Defendant has produced the emails in question to the Court for in camera review.

I.     Background

      Plaintiff brings this action for breach of a Service and Disposal Agreement

("Agreement") which it entered into with the Defendant on August 1, 2010.  (Doc. 1).

On March 21, 2011, the Defendant received an undated letter from the Plaintiff stating

that Defendant was "not honoring" the parties' Agreement and consequently, the

Defendant owed Plaintiff $1,132,500 that was due immediately.  (Doc. 68-1).  The

matter was not resolved and on July 18, 2011, Plaintiff filed suit against the Defendant

which removed the case to this Court on the basis of diversity jurisdiction.  (Docs. 1 &

2).  In its Answer, Affirmative Defenses and Counterclaim, the Defendant alleges,

among other things, that it is excused from performance and is entitled to damages

based upon Plaintiff's alleged breach of its contractual duties, fraud, mistake and/or

error.  (Doc. 4).

　　　After the issues were joined, Plaintiff set the FED. R. CIV. P. 30(b)(6) deposition

of Defendant's corporate representative with the most knowledge of the factual basis

for Defendant's affirmative defenses and counterclaims.  (Doc. 67-1).  The deposition

notice included a request that Defendant produce documents.  Less that 24 hours

before the scheduled deposition, the Defendant faxed its Privilege Log to Plaintiff's

counsel.  (Doc. 67).  Because the Privilege Log was faxed after the close of normal

business hours, Plaintiff's counsel did not see it until he arrived for the deposition.

(Id.)  The Privilege Log lists the 18 emails that are the subject of this motion.  (Doc.

67-1).  At the deposition, the Defendant produced Christopher Griffin as its corporate

representative.  (Doc. 67).  Unbeknownst to Plaintiff until the deposition began, Griffin

is in-house counsel for the Defendant.  (Docs.55-1 & 67).  At different times during the

deposition, the Defendant asserted both the work product and attorney-client

privileges in response to questions propounded by Plaintff.  (Id.)

　　　The Defendant says that after it received Plaintiff's letter claiming it was owed

money, Griffin, in his role as Director of Legal Affairs, undertook an internal

investigation of Plaintiff's allegations in anticipation of litigation and so that Griffin

could respond to Plaintiff.  (Doc. 68).  In the process, Griffin exchanged emails with

some of the Defendant's other employees.  (Id.)  Seventeen of the emails were written before this lawsuit was filed.  The emails authored by Griffin include a statement that the information in them "may be proprietary, confidential, and protected by attorney/client privilege or subject to the work product doctrine and thus protected from disclosure."  The Defendant believes all the emails, both from and to Griffin, are privileged because they resulted from the performance of legal services by Griffin for the Defendant.  (Id.)

II.      Framework for Analysis

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible."  Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).  Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . ."  FED. R. CIV. P. 26(b)(1).  It is not necessary that the material be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

The party asserting a privilege against the disclosure of information must "expressly make the claim; and describe the nature of the documents, . . . not produced or disclosed-and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim."  FED. R. CIV. P. 26(b)(5)(A).

The federal work product privilege is contained in FED. R. CIV. P. 26(b)(3)(A) which provides that an opponent "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless the materials are

"otherwise discoverable" and the party seeking the information "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id. If the Court orders the disclosure of work product protected materials then "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Id. The burden is on the party asserting the work product privilege to prove that the requested materials are protected work  product. Palmer v. Westfield Ins. Co., 2006 WL 2612168 *3 (M.D.Fla.).

Because this is a diversity case, Florida law controls the application of the attorney-client privilege. Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn, 2012 WL 3848592 *6 (M.D.Fla.) citing Id. at *2. The privilege, which is codified in § 90.502 Florida Statutes, protects both the furnishing of legal advice by the lawyer and the giving of information to the lawyer to enable the lawyer to provide informed advice. Hagans v. Gatorland Kubota, LLC/Sentry Ins., 45 So.3d 73, 76 (Fla. 1st DCA 2010).  This is true even when the facts communicated to the lawyer are discoverable by other means.  Id.  The burden of establishing the attorney-client privilege is also on the party claiming it.  Southern Bell Telephone and Telegraph Co. v. Deason, 632 So.2d 1377, 1383 (Fla. 1994).  However, when communications appear on their face to be privileged, the burden is on the party seeking disclosure to prove a set of facts supporting an exception to the privilege. MCC Management of Naples, Inc. v. Arnold & Porter LLP, 2010 WL 1817585 *2

(M.D.Fla.).  The privilege is only available when all of the elements of the privilege are present.  Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn, 2012 WL 3848592 at *4.

The attorney-client privilege applies to communications between corporate counsel and the corporation's employees concerning legal matters.  Shell Oil Co. v. Par Four Partnership, 638 So.2d 1050 (Fla. 5th DCA 1994); and Florida Marlins Baseball Club, LLC v. Certain Underwriters at Lloyd's London, 900 So.2d 720, 721 (Fla. 3rd DCA 2005).  In Southern Bell, the Florida Supreme Court enumerated the criteria which the courts examine in deciding whether communications by a corporation are protected by the attorney-client privilege:

> (1) the communication would not have been made but for the contemplation of legal services;
>
> (2) the employee making the communication did so at the direction of his or her corporate superior;
>
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
>
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

Id. at 1383.[1]

"The structure of certain business enterprises, when their legal departments

---

[1]See, Provenzano v. Singletary, 3 F.Supp.2d 1353, 1366 (M.D.Fla. 1997), for the criteria applicable to communications between an individual and a lawyer.

have broad powers, and the manner in which they circulate documents is broad,
has consequences that those companies must live with relative to their burden of
persuasion when privilege is asserted." Preferred Care Partners Holding Corp. v.
Humana, Inc., 258 F.R.D. 684, 689 (S.D.Fla. 2009) citing In re Vioxx Products
Liability Litigation, 501 F. Supp. 2d 789, 805 (E.D.La. 2007).  The advent of email
has added to the difficulty of determining the purpose and intent of communications
that involve corporate legal counsel.  In re Vioxx, 501 F. Supp. 2d at 798.  Courts
have held that when a communication is simultaneously emailed to a lawyer and a
non-lawyer, the corporation "cannot claim that the primary purpose of the
communication was for legal advice or assistance because the communication
served both business and legal purposes." In re Seroquel Products Liability
Litigation, 2008 WL 1995058 *4 (M.D.Fla.); In re Vioxx, 501 F. Supp. 2d at 805
(citing United States v. Chevron Corp., 1996 WL 444597, at *2 (N.D. Cal. 1996)
("When a document is prepared for simultaneous review by non-legal as well as
legal personnel, it is not considered to have been prepared primarily to seek legal
advice and the attorney-client privilege does not apply."); United States v.
International Business Machines Corp., 66 F.R.D. 206, 213 (S.D.N.Y 1974) ("If the
document was prepared for purposes of simultaneous review by legal and non-
legal personnel, it cannot be said that the primary purpose of the document is to
secure legal advice.")).  In such cases, the email and attachments are not privileged
and are discoverable.  When an email is sent to a lawyer and non-lawyers in the
corporation are copied, it "raise[s] a question as to whether the primary purpose of

-6-

the communication was for legal advice or assistance." In re Vioxx, 501 F. Supp. 2d at 812.

III.     Discussion

While the Defendant has explained why Griffin sought information from some of the Defendant's other employees it has failed to provide the Court with all the information necessary for the Court to apply the factors enumerated in Southern Bell. Specifically, Defendant has not identified by title, position or duties, all of the persons who sent, received or were copied on the emails. While some of this information can be assumed based upon the titles appearing beneath the names of the addressees, Defendant has also not provided the hierarchy its employees whose names appear on the emails. Consequently, the Court cannot tell whether emails were sent at the direction of corporate superiors, whether the communications were within the scope of the employees' duties, or whether the communications were disseminated beyond persons who had a need to know the information. Therefore, the Defendant has not met its burden. Nevertheless, based upon the information available to the Court, it has made the following determinations with respect to the emails in question:

1.     Email dated November 9, 2011 at 9:12 a.m., from Robert Maier to Griffin, Tim Garris and George Harris. While the Court is concerned about the number of non-lawyers included in this communication, it is satisfied that it was written for the purpose of gathering information in order to perform legal services and in anticipation of litigation. Accordingly, the Defendant's assertion of privilege

is **SUSTAINED**.

2.      Email dated March 28, 2011 at 8:42 a.m., from Don Manning to John Bohannon with copy to Christine Aguirre.  This is an email from one non-lawyer to another non-lawyer, with copy to a third non-lawyer.  The information in the email is factual.  Accordingly, the Defendant's assertion of privilege is **OVERRULED**.

3.      Email dated March 25, 2011 at 11:23 a.m., from Griffin to Bohannon. This communication was in the course of an investigation by counsel attempting to gather information in order to perform legal services and in anticipation of litigation. It also discloses legal strategy.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

4.      Email dated March 25, 2011 at 11:17 a.m., from Bohannon to Griffin. This communication was written for the purpose of responding to an inquiry by counsel attempting to gather information in order to perform legal services and in anticipation of litigation.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

5.      Email dated March 25, 2011 at 9:45 a.m., from Bohannon to Griffin. This communication was written for the purpose of gathering information in order to perform legal services and in anticipation of litigation.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

6.      Email dated March 23, 2011 at 11:06 a.m., from Griffin to Bohannon with copy to Huffman.  This is an email from inhouse counsel to other employees for the purpose of gathering information necessary to render legal services.

-8-

Accordingly, the Defendant's assertion of privilege is SUSTAINED.

7.     Email dated March 22, 2011 at 4:51 p.m., from Bob Huffman to Bohannon with copy to Griffin.  This communication from one non-lawyer to another non-lawyer with copy to inhouse counsel concerns how Defendant has and will respond through its lawyer to the Plaintiff.  Accordingly, the Defendant's assertion of privilege is SUSTAINED.

8.     Email dated March 22, 2011 at 11:49 a.m., from Griffin to Bohannon. This communication was in the course of an investigation by counsel attempting to gather information in order to perform legal services and in anticipation of litigation. Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

9.     Email dated March 22, 2011 at 11:43 a.m., from Bohannon to Griffin. This communication was written for the purpose of responding to an inquiry by counsel attempting to gather information in order to perform legal services and in anticipation of litigation.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

10.     Email dated March 22, 2011 at 10:09 a.m., from Griffin to Bohannon. This communication was written for the purpose of gathering information in order to perform legal services and in anticipation of litigation.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

11.     Email dated March 21, 2011 at 12:37 p.m., from Bohannon to Huffman.  This communication from one non-lawyer to another non-lawyer does not request or transmit legal advice or address legal strategy.  Accordingly, the

-9-

Defendant's assertion of privilege is OVERRULED.  The Court is under the impression that this email has already been produced by the Defendant to Plaintiff.

12.     Email dated March 21, 2011 at 1:03 p.m., from Huffman to Bohannon. This communication from one non-lawyer to another non-lawyer does not request or transmit legal advice or address legal strategy.  Accordingly, the Defendant's assertion of privilege is OVERRULED.

13.     Email dated March 28, 2011 at 7:11 a.m., from Bohannon to Manning.  This is an email from one non-lawyer to another non-lawyer.  The email does not request or transmit legal advice or address legal stragegy.  Accordingly, the Defendant's assertion of privilege is **OVERRULED**.

14.     Email dated June 21, 2011 at 9:12 a.m., from Maier to Griffin, Garris and Harrison.  This is the same email as number one above.  While the Court is concerned about the number of non-lawyers included in this communication, it is satisfied that it was written for the purpose of gathering information in order to perform legal services and in anticipation of litigation.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

15.     Email dated June 16, 2011 at 12:08 p.m., from Griffin to Garris and Harrison with copy to Maier.  While the Court is concerned about the number of non-lawyers included in this communication, it is satisfied that it was written for the purpose of giving legal advice.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

16.     Email dated June 16, 2011 at 11:44 a.m., from Griffin to Garris and

Harrison with copy to Maier.  While the Court is concerned about the number of non-lawyers included in this communication, it is satisfied that it was written for the purpose of gathering information in order to perform legal services.  Accordingly, the Defendant's assertion of privilege is **SUSTAINED**.

17.     Email dated June 16, 2011 at 9:50 a.m. from Harrison to Garris with copy to Griffin and Maier.  This is an email from one non-lawyer to another non-lawyer, with copy to a third non-lawyer and a copy to inhouse counsel.  The information in the email is factual.  Accordingly, the Defendant's assertion of privilege is **OVERRULED**.

18.     Email dated June 16, 2011 at 7:01 a.m. from Garris to Harrison with copy to Griffin.  This is an email from one non-lawyer to another non-lawyer with a copy to inhouse counsel.  The information in the email is factual.  Accordingly, the Defendant's assertion of privilege is **OVERRULED**.

The Defendant shall produce to Plaintiff those emails to which its objections have been overruled within seven days from the rendition of this Order.  The Court has shredded all of the emails produced to it for in camera inspection.

**ORDERED** at Orlando, Florida on this 19th day of November, 2012.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel